FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 21, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ADRIAN S., | No. 1:17-cv-03158-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 19 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 19. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 15, and denies Defendant's Motion, ECF No. 19.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

ORDER - 2

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

ORDER - 3

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income benefits on December 5, 2012, alleging an amended onset date of October 30, 2012. Tr. 355-64, 51. Benefits were denied initially, Tr. 214-22, and upon reconsideration. Tr. 225-35. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on January 13, 2015. Tr. 45-81. On January 30, 2015, the ALJ denied Plaintiff's applications. Tr. 186-207. Plaintiff

ORDER - 6

appealed the ALJ's decision and on April 26, 2016, the Appeals Council vacated the ruling and remanded the matter to the ALJ.[1]  Tr. 208-11.

On remand, the same ALJ conducted a second hearing on July 21, 2016 with a different vocational expert.  Tr. 82-123.  Plaintiff amended his alleged period of disability to a closed period from November 13, 2010[2] through August 31, 2015.  Tr. 87.  On October 14, 2016, the ALJ denied Plaintiff's applications.  Tr. 14-40.

At step one, the ALJ found Plaintiff had engaged in substantial gainful activity from May 2012 to October 2012, and August 2015 through the date of the decision, but that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity.  Tr. 19-21.  At step two, the ALJ found Plaintiff has the following severe impairments: cognitive disorder, anxiety disorder NOS, depression, alcohol abuse, mathematics disorder, hypotonia, and dyspraxia with impaired coordination.  Tr. 21.  At step three, the ALJ found

_____

[1] The Appeals Council remanded the case citing the need for clarification of the RFC, review of the cited jobs Plaintiff could perform which appeared inconsistent with the RFC, and consideration of Plaintiff's obesity and history of alcohol abuse.  Tr. 209-10.

[2] This is the date Plaintiff was terminated from his work as a Yakima County corrections officer due to his inability to pass the firearms test.  Tr. 99, 410, 599.

ORDER - 7

that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following additional limitations:

> [H]e is able to stand or walk for up to 6 hours out of an 8-hour workday; he is able to sit for up to 6 hours out of an 8-hour workday; he is able to lift and carry up to 10 pounds; he is unable to climb ladders, ropes, or scaffolds; he is able to frequently crawl; he is able to occasionally handle and finger with no repetitive use of his hands for more than 5 minutes at a time; he is limited to occasional exposure to hazardous conditions, such as proximity to unprotected heights and moving machinery; and he is limited to tasks that can be learned in 30 days or less, involving no more than simple work-related decisions and few workplace changes.

Tr. 25-26.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 31. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the Plaintiff can perform such as usher, furniture rental clerk, and sandwich board carrier. Tr. 32. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from November 13, 2010, through August 31, 2015. Tr. 32.

On July 14, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

ORDER - 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's substantial gainful activity at step one;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ properly weighed Plaintiff's symptom claims; and

4. Whether the ALJ properly determined that Plaintiff could perform other work in the national economy at step five.

*See* ECF No. 15 at 4.

**DISCUSSION**

**A. Substantial Gainful Activity**

Plaintiff claims the ALJ erred at step one by improperly considering his work as a surveillance officer as substantial gainful activity. ECF No. 15 at 16-18. Plaintiff worked at Casino Caribbean from May to August 2012 and at Legends Casino (Legends) from September to October 2012. Tr. 410. Plaintiff argues this work activity should have been characterized as "unsuccessful work attempts" (UWAs). *Id.* This issue arises because at Plaintiff's second hearing, he amended his alleged onset date of disability from October 30, 2012 to November 13, 2010

ORDER - 9

and UWAs pertain to failed attempts to rejoin the work force after the alleged onset of disability. Tr. 17. The issue requires resolution because Plaintiff will not receive benefits for those time periods he engaged in substantial gainful activity.

At step one of the sequential evaluation process, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the ALJ must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b). Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full-or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. §§ 404.1572, 416.972. In some instances, short-term work may be considered an unsuccessful work attempt instead of substantial gainful activity. *See Gatliff v. Comm'r Soc. Sec. Admin.*, 172 F.3d 69, 694 (9th Cir. 1999). The concept was designed as an equitable means of disregarding work that does not demonstrate sustained substantial gainful employment. *Id*.; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

A UWA is defined by regulation as "work that [the claimant is] *forced to stop* or reduce below the substantial gainful activity level after a short time because of [his] impairment." 20 C.F.R. § 404.1574 (eff. Dec. 18, 2006 to Nov. 15, 2016)

(emphasis added); 20 C.F.R. § 416.974(a)(1); *see also* Social Security Ruling (SSR) 84–25; SSR 05-02. Under the regulations in effect at the time of the ALJ's decision, the three main requirements to qualify for the UWA exclusion were: (1) the claimant must have a significant break in the continuity of his or her work before the work attempt; (2) the work must end or be reduced below the substantial gainful activity earnings level, within 6 months because of the impairment or because of the removal of special conditions which took into account the impairment; and (3) for work that lasts between three and six months, the claimant satisfies one of the following criteria: (i) frequent absences from work because of the impairment; (ii) unsatisfactory work because of the impairment; (iii) the claimant worked during a period of temporary remission of the impairment; or (iv) the claimant was working under special conditions that were essential to the claimant's performance and these conditions were removed. 20 C.F.R. §§ 404.1574(c)(4), 416.974(c)(4).

Here, the ALJ concluded Plaintiff's two jobs in surveillance monitoring were not UWAs, but rather substantial gainful activity. Tr. 21. The ALJ found Plaintiff worked for substantial earnings ($9,295.39) and did not leave either position due to his impairments. Tr. 20. In regards to his work at Casino Caribbean, the ALJ found that "in spite of [Plaintiff's] difficulties," he was able to sustain the job but voluntarily left it for another with benefits and higher wages.

Tr. 21.  The ALJ relied upon Plaintiff's clear testimony from the January 2015

hearing stating: "I left because Legends offered me I think a dollar more in wages

plus benefits, compared to the Car[]ib[b]ean."  Tr. 55.  The ALJ also noted that

Plaintiff left the job after having sought out a very similar job at a different casino

and there were no adverse performance indicators from Plaintiff's employer.  Tr.

20-21.

Substantial evidence supports the ALJ's conclusion regarding Plaintiff's

work at Casino Caribbean.  Plaintiff contends the ALJ "ignored that he also had

difficulty performing" the job.[3]  ECF No. 15 at 17-18.  Though the ALJ did not

_____

[3] While Plaintiff was employed at Casino Caribbean, Plaintiff reported to his

examining neuropsychologist, Jane Kucera Thompson, Ph.D., that the job was

either "too slow and boring, or it is too fast and there is too much happening."  Tr.

599.  He also reported to her that he could not count the cards or learn the games

he was expected to monitor.  *Id*.  In an evaluation in 2013, Plaintiff told a doctor

that the job at Casino Caribbean "was too challenging for him."  Tr. 698.  At the

January 2015 hearing, Plaintiff testified that he "wasn't very good at it," but the

casino was short-staffed.  At the July 2016 hearing, Plaintiff testified he left the job

both because it did not offer benefits and he hated it:

>    [A]ll that multitasking is very overwhelming, very stressful, and I did
>    horrible.  You know, I was crossing my fingers every day.  I'm going to get

discuss the evidence of Plaintiff's perceived performance challenges, the ALJ rejected "the notion that . . . [Plaintiff] had significant problems with job performance" because he remained in the line of work for five months. Tr. 27. Evidence of Plaintiff's difficulties with the work at Casino Caribbean do not demonstrate Plaintiff was "forced to stop" work or to change employers *because* of his impairments as the regulations require, even if his challenges might have played a role in his voluntary decision to quit for a higher paying job. Accordingly, substantial evidence supports the ALJ's conclusion Plaintiff's work at Casino Caribbean was not a UWA.

In contrast, the ALJ's consideration of Plaintiff's resignation from Legends was flawed. The ALJ concluded Plaintiff's "termination or forced resignation" from Legends was due to "his request for accommodation," "not his actual job performance or inability to perform his job duties." Tr. 20-21. In reaching this conclusion, the ALJ found that "[h]is departure from Legends *could not have been* related to Dr. Thompson's evaluation." Tr. 21 (emphasis added).

---

fired, I'm going to get fired, but they had nobody else either. They had these guys on vacation, so by default, you know. And I left that job because it was zero benefits and, you know, I hated it. And they said, you know, you go down to Legends Casino, all right? I said okay. And they had benefits.

Tr. 99.

The ALJ's conclusion was reached based upon an inaccurate recitation of the testimony and timeline of events. The record reflects Plaintiff worked at Legends for approximately two months (September to October 2012). Plaintiff testified that on October 30, 2012, he met with Dr. Thompson to review the test results from the August 2012 evaluation and Dr. Thompson "basically told" him that physical work in the security field was not in his "best interest."[4] Tr. 55. Plaintiff testified he told his employer this and asked for an "accommodation" to a

_____

[4] Dr. Thompson's August 31, 2012 report discusses her view of Plaintiff's occupations:

> [A]ll the occupations [Plaintiff] has attempted to date have involved cognitive skills or motor skills that are absolutely wrong for him given his pattern of strengths and weaknesses. . . . His current job of surveillance for a casino, which involves monitoring numerous cameras, completely over-taxes him not because his attention is bad but because his multitasking is poor. In addition, he is unable to learn the card games and learn to count cards in the way that he needs to for the job because of his poor math abilities and weak visual processing and learning, all of which are rooted in his probable brain abnormalities.

Tr. 618. "[Plaintiff] has been involved in completely inappropriate employment in the past. He is currently working in a field that taps some of his weaknesses, including multitasking and divided attention, math skills, and visual learning." Tr. 621.

ORDER - 14

less physical job.[5]  He was then suspended without pay for a week.  Tr. 55.

Plaintiff testified his employer denied the accommodation request, then "suggested

[he] resign," and he did.  Tr. 55.  Plaintiff further testified that his employer stated

in contested unemployment proceedings Plaintiff would have been fired had he not

resigned.  Tr. 55.

The ALJ's analysis erroneously assumed Plaintiff could only have obtained

insight from Dr. Thompson while working at Casino Caribbean in August 2012

and overlooked the October 30, 2012 appointment with Dr. Thompson discussing

the test results with Plaintiff and his vocational counselor.  Tr. 55 ("On October 30,

2012…I met with Dr. Thompson."); Tr. 20 (inaccurately describing Plaintiff's

testimony as "[h]e stated that, when at Legends, he underwent an evaluation…");

Tr. 21 (inaccurately suggesting Plaintiff testified he obtained insight from Dr.

Thompson *then* sought the job at Legends); Tr. 836 (Oct. 30, 2012: Dr.

Thompson's progress note).  The timeline identified by the ALJ made "little

sense," Tr. 21, because it was not accurate.

Substantial evidence does not support the ALJ's UWA analysis of Plaintiff's

work at Legends, as the ALJ ignored the uncontradicted evidence that Plaintiff was

_____

[5] In one evaluation Plaintiff reported he was "let go" from Legends after the

employer required that he learn to "restrain people."  Tr. 698.

ORDER - 15

asked to resign from the work after informing his employer Dr. Thompson's counsel that he was unfit for that line of work due to his impairments. Tr. 55; Tr. 836 (Oct. 30, 2012 progress note stating Plaintiff "has been working in jobs that stress his weaknesses instead of building on his strengths."). The nature of ALJ's step one error is consistent with other errors which reveal the ALJ did not properly weigh and consider all of the record evidence. Nevertheless, the Court concludes the error at step one was harmless, because Plaintiff could not have demonstrated the other required UWA element, a "significant break in the continuity of [his] work," as there was no break between his work at Casino Caribbean and Legends.[6]

**B. Medical Source Opinion Evidence**

Plaintiff contends the ALJ improperly evaluated the opinions of Jane Kucera Thompson, Ph.D., Marjorie Henderson, M.D., and Jennifer Schultz, Ph.D. ECF No. 15 at 4-14.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

_____

[6] The Court notes the SSA field officer preparing the form SSA-821 believed UWA should apply. Tr. 401 ("[claimant] worked for less than 6 [months and] ceased work [due to] his condition. UWA should apply."); *see also* Tr. 465 (suggesting it may be necessary to seek additional clarity on these issues).

ORDER - 16

(examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

*1. Jane Kucera Thompson, Ph.D.*

a. August 2012 Opinion

Plaintiff's vocational rehabilitation counselor referred him to Dr. Thompson, a specialist of neuropsychology, with a request to determine Plaintiff's cognitive deficits and suitability for further training or employment services. Tr. 597. Over a two-day period in August 2012, Dr. Thompson conducted a neuropsychological assessment reviewing Plaintiff's medical and academic history and administering more than 30 tests covering intellectual and academic skills, attention and concentration, basic motor control, basic perceptual functioning, visual reasoning skills, speech, executive functions, memory, and social/emotional functioning. Tr. 607-15. Dr. Thompson diagnosed: Cognitive Disorder Due to Late Effects of Pre-Term Birth (seven months) and Very Low Birth Weight (1350 grams); Major Depressive Disorder, Recurrent, Severe; Anxiety Disorder, NOS; Developmental Coordination Disorder; Mathematics Disorder; and a GAF score of 43. Tr. 615. She indicated these impairments present cognitive, emotional, motor, and academic skill deficits with "substantial obstacles." Tr. 618. Dr. Thompson opined due to extremely poor balance, Plaintiff would be "better served by having a sedentary job"; due to "severely impacted" math skills, Plaintiff cannot perform jobs involving a high level of mathematics; and due to "problems with fine motor output, including strength, dexterity, and endurance, he should be regarded as a

person who has no use of his hands" and "should be served with appropriate accommodations and assistive technologies for someone with this type of problem." Tr. 619.

Defendant contends the ALJ accorded Dr. Thompson's 2012 opinion "little weight." ECF No. 19 at 10. However, as Plaintiff correctly points out, the ALJ's decision does not address Dr. Thompson's 2012 opinion. Tr. 29-31. The ALJ's decision states he accords little weight to the *2013* opinions of Dr. Thompson, not the 2012 opinions. Tr. 29 (citing to exhibits 20F and 21F at Tr. 796-806). Though the ALJ's decision leaves no doubt he was aware of Dr. Thompson's 2012 assessment, Tr. 22, the ALJ failed to provide Dr. Thompson's opinions any degree of review at all, and gave no reasons for doing so. Tr. 29 ("I consider the following opinions in determining his residual functional capacity."). The failure to discuss and explain what weight he assigned to the most medically significant opinion evidence in the record, by an examining specialist who assessed disabling limitations based upon two days of objective testing, constitutes reversible, non-harmless, error. *Hill*, 698 F.3d at 1160 (ALJ's failure to discuss doctor's statement or otherwise explain weight is harmful error). When the ALJ improperly ignores significant and probative evidence in the record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete residual functional capacity

determination." *Id*. at 1161; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95

(quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

Though the Court concludes that harmless error does not apply in this

circumstance, the Court acknowledges that Dr. Thompson's 2012 opinions were

largely incorporated into her later rendered 2013 opinions. Tr. 796-801.

Accordingly, had the ALJ properly considered Dr. Thompson's 2013 opinions, the

ALJ might have reached the same conclusion as to all of Dr. Thompson's opinions.

However, as set forth below, the ALJ also failed to provide adequate reasons to

discount Dr. Thompson's 2013 opinions.

b. September 2013 Opinions

On September 26, 2013, Dr. Thompson completed two form assessments, a

Mental Residual Functional Capacity Assessment (MRFCA), Tr. 796-97, and a

Medical Report, Tr. 798-801. In the MRFCA, Dr. Thompson opined Plaintiff was

markedly limited (unable to perform the activity for more than 33 percent of the

work day) in the following contexts: the ability to remember locations and work-

like procedures; the ability to understand and remember detailed instructions; the

ability to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods; the ability to be aware of normal

hazards and to take appropriate precautions; and the ability to travel to unfamiliar

places or use public transportation. Tr. 796-98. She further opined Plaintiff was moderately limited in seven other areas. *Id.* Dr. Thompson gave a detailed explanation outlining Plaintiff's cognitive (visual reasoning, learning, and memory), motor (balance, strength, manual motor speed and dexterity, and fingertip sensation) and executive function (problem-solving, pattern recognition, task organization, and multitasking) deficits. Tr. 798.

Dr. Thompson's September 26, 2013 Medical Report described Plaintiff's limitations as: "lack of sensation, praxis strength, and dexterity in both hands; impaired balance; cognitive deficits – multiple; pain in hands; mental confusion, gets lost; problems with sustained concentration, problem-solving, multitasking." Tr. 799. Additionally, she stated Plaintiff has an unexplained need to void bowels immediately after eating anything and when trying to work he has to avoid eating anything all day long, and that medication side effects worsen this problem. *Id.* Dr. Thompson opined Plaintiff could not perform any skilled hand or finger movement more than five minutes without developing muscle fatigue and pain; he could never handle and occasionally reach, his exertion level was "severely limited," meaning unable to lift at least two pounds or unable to stand and/or walk; and he would miss an average of two days per month due to hand pain, muscle fatigue, and mood swings. Tr. 799-800. Dr. Thompson did not anticipate any prognosis of improvement stating, this is a "lifelong disability arising from the

patient's preterm birth and low birth weight, which caused abnormalities in his brain formation and consequently his cognitive and motor functions." Tr. 799.

Because the ALJ did not accord any medical opinion more than "some weight" the ALJ did not plainly reject Dr. Thompson's 2013 opinions as contradicted by any other opinion. However, "insofar as the doctor suggested Plaintiff was unable to work," ECF No. 19 at 10, the opinion was contradicted by the opinions of the State agency reviewing doctors Thomas Clifford, Ph.D., Tr. 126-38, 140-52, John Gilbert, Ph.D., 176-78, 180-82, and Howard Platter, MD., 179-80, 182-85. The ALJ was required to provide specific and legitimate reasons for rejecting Dr. Thompson's opinions. *Bayliss*, 427 F.3d at 1216.

First, the ALJ concluded Dr. Thompson's opinions were "inconsistent with her earlier reports where she concluded that claimant's employability was largely dependent on finding an appropriate job." Tr. 29-30. An ALJ may reject opinions that are not supported by the medical source's own data or are internally inconsistent. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). However, the inconsistency described by the ALJ is not supported by substantial evidence. Dr. Thompson's earlier report from 2012 opined Plaintiff's employability "would require a number of work accommodations and adaptations" where there is "limited demand on his weak cognitive and motor functions." Tr. 787. Dr. Thompson described the

environment as one in which he is regarded as "a person who has no use of his hands," does not require high level math, and avoids any type of "manual motor output," without an alternative means of meeting the expectation such as using voice activated computer programs. Tr. 787. The "appropriate" sheltered work environment described by Dr. Thompson is consistent with Dr. Thompson's 2013 marked limitations and opinion that Plaintiff could not engage in work with any lifting requirements on a "day to day," "sustained, competitive basis." Tr. 800. This was not a specific and legitimate reason to reject Dr. Thompson's 2013 opinions.

Second, the ALJ found the physical limitations assessed by Dr. Thompson were "outside the scope of her expertise" because she was "a psychologist, not a medical physician," and "did not perform[] any physical examination to determine strength and lifting ability, let alone have the credentials to supports such physical determinations." Tr. 30. A medical provider's specialization is a relevant consideration in weighing medical opinion evidence. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty…"), 20 C.F.R. § 416.927(c)(5). Opinions of specialists may be particularly important and entitled to greater weight than those of other physicians, with respect to certain diseases

that are "poorly understood within much of the medical community." *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004).

There is no basis for determining Dr. Thompson did not have the expertise to make physical determinations. Dr. Thompson's opinions are directly related to her specialty, as practicing clinical neuropsychologist, trained in the identification of brain dysfunction. Tr. 624; ECF No. 15 at 7-8. Defendant does not dispute she had credentials to test and comment on Plaintiff's motor deficits, predict their likely source based upon her knowledge of neuroimaging studies of children who were born pre-term, and comment on their relation to abnormalities in the brain, which the MRI evidence of record confirms Plaintiff has. Furthermore, Dr. Thompson in fact performed extensive motor skills testing and reviewed findings of other providers who had performed grip testing. Tr. 772 (reviewing the findings of M. Sean Mullin, D.O.); Tr. 775, 777-78 (describing lateral dominance examinations, sensory-perceptual examination, praxis screen, manual motor and finger tapping test, grip strength, gross motor testing, and higher-order balance testing). The ALJ's second reason is neither accurate nor a sufficient basis for rejecting Dr. Thompson's opinions. The ALJ's inaccurate assessment of the objective testing performed, misunderstanding of the specialization of Dr. Thompson, and mistaken discounting of all of Dr. Thompson's probative medical evidence on this basis is harmful, reversible, error.

The Court cannot reasonably deem the ALJ's error a harmless misstatement, as Defendant suggests. *See* ECF No. 19 at 10 (conceding the reason was perhaps not "persuasive"). Indeed, the ALJ made the same error twice. Tr. 198 (January 2015 decision discounting opinion of Dr. Thompson as "outside the scope of her expertise" because she is a psychologist). While Plaintiff claims there was only a "narrow disagreement" between the ALJ's RFC and Dr. Thompson's opinions, the outcome of this case hinges upon narrow disagreements in the evidence which the ALJ was instructed on remand to carefully review and resolve.

The rejection of Dr. Thompson's opinions constitutes harmful error requiring a remand.

*2. Marjorie Henderson, M.D.*

In February 2014, Plaintiff was referred for evaluation to Dr. Henderson, a physical medicine and rehabilitation specialist. Dr. Henderson performed nerve conduction studies which were normal and according to Dr. Henderson, ruled out other neuromuscular diseases. Tr. 805-06. On physical examination, Dr. Henderson noted a number of findings: mild stiffness and decreased arm swing, depressed mental status, hypertonicity; distal weakness with [decreased] grip and ankle weakness, limited range of motion, wide-based gait and station, hyper reflexia, impaired romberg and finger-to nose coordination, and "difficulty with coordination partially related to spasticity." Tr. 803. She diagnosed poor muscle

tone, congenital spastic cerebral palsy, and impaired cognition.  *Id*.  Dr. Henderson

then concluded:

> [Patient] has been unable to work secondary to combination of motor
> coordination difficulties complicated by dystonia when doing repetitive
> work.  Developmental delay makes cognitive retraining difficult – [patient]
> was unable to pass his college classes.  At this time I support 100 [percent]
> disability.  I have started trials of medications for increased tone but I am not
> expecting them to help the dytonias that he has with repetitive motion.

Tr. 803-04.

A statement by a medical source that a claimant is "unable to work" or

"disabled" is not a medical opinion and is not due "any special significance."  20

C.F.R. § 416.927(d).  Nevertheless, the ALJ is required to "carefully consider

medical source opinions about any issue, including opinion about issues that are

reserved to the Commissioner."  SSR 96-5p at *2.  "If the case record contains an

opinion from a medical source on an issue reserved to the Commissioner, the

adjudicator must evaluate all the evidence in the case record to determine the

extent to which the opinion is supported by the record."  *Id*. at *3.  "In evaluating

the opinions of medical sources on issues reserved to the Commissioner, the

adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and

416.927(d)."  *Id*.

Here, the ALJ accorded Dr. Henderson's opinion "little weight."  Tr. 30.

The opinion was contradicted by the opinions of the State agency reviewing

doctors Thomas Clifford, Ph.D., Tr. 126-38, 140-52, John Gilbert, Ph.D., 176-78,

ORDER - 26

180-82, and Howard Platter, MD., 179-80, 182-85. The ALJ was required to provide specific and legitimate reasons for rejecting Dr. Henderson's opinions. *Bayliss*, 427 F.3d at 1216; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("[A]n ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability."); *Hill*, 698 F.3d at 1160 (applying same principle to examining physicians).

First, the ALJ found that the opinion was inconsistent with the fact Plaintiff "had a normal EMG/NCV study." Tr. 30. An opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Defendant concedes the ALJ's finding "may not have been persuasive, since Dr. Henderson explained that EMG testing was used to rule out other neurological conditions." ECF No. 19 at 12. The record reveals no basis to find the normal EMG/NCV study was inconsistent with Dr. Henderson's opinion as to Plaintiff's inability to work. This was not a specific and legitimate reason to reject Dr. Henderson's opinion.

Next, the ALJ accorded Dr. Henderson's opinion little weight because she found it inconsistent with Plaintiff's work history. Tr. 30. The ALJ found Plaintiff

was working "as a surveillance officer at a casino up until October 2012, with no apparent difficulties" and stopped going to school "only after getting another job in 2015." Tr. 30. An ALJ may give less weight to an opinion that is inconsistent with other evidence in the record. *Batson*, 359 F.3d at 1195. A material inconsistency between a doctor's opinion and a claimant's activities can furnish a specific, legitimate reason for rejecting a physician's opinion. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

However, work *after* the period for which an applicant is seeking disability, is not a specific and legitimate reason for rejecting the opinion of a physician, or the medically supported testimony of an applicant, unless the work in question is wholly inconsistent with the claimed disability. *See Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002) ("we hold that an applicant's employment that begins after the end of the period for which the applicant is seeking disability benefits, unless wholly inconsistent with the claimed disability, is not a specific and legitimate reason for rejecting the opinions of examining physicians that an individual is disabled. It follows that such a record of work does not supply the more demanding clear and convincing reason required to reject the medically supported testimony of an applicant."). Plaintiff's employment as a substance abuse peer counselor at Spectrum after the closed period should not have been relied upon by the ALJ because it is not inconsistent with his claimed

disability, given the accommodations afforded Plaintiff in performing the job.  As noted by the ALJ, he spends the bulk of his time talking to patients, he uses a computer aided typing program (no manual output expectations), he does not have deadlines and is able to work at his own pace, and works with a small team.  Tr. 27.

Furthermore, the ALJ mischaracterized Plaintiff's work after his alleged onset date.  It is misleading to suggest Plaintiff worked as a surveillance officer "up until October 2012," when in fact the work was from May to October 2012.  In reaching the conclusion that Plaintiff performed the work "with *no apparent difficulties*," Tr. 30 (emphasis added), the ALJ cited no evidence and ignored substantial evidence documenting Plaintiff's difficulties performing the work, as well as his forced resignation after two months in a position with better wages and benefits after he requested an accommodation.  *See, e.g.,* Tr. 54 (Plaintiff's testimony explaining he "wasn't very good" at surveilling the card games); Tr. 55 (Plaintiff's testimony explaining unemployment proceedings in which Legends reportedly stated Plaintiff would have been fired if he would not have resigned); Tr. 99 (Plaintiff's testimony that "all that multitasking is very overwhelming, very stressful, and I did horrible.  You know, I was crossing my fingers every day.  I'm going to get fired, I'm going to get fired, but they had nobody else either."); Tr. 599 (Plaintiff's contemporaneous explanation to Dr. Thompson that there was "too

ORDER - 29

much happening" and he could not count the cards or learn the games he was supposed to monitor); Tr. 698 (Plaintiff's explanation to Dr. Schultz that the job was "too challenging" and he was "let go" in October 2012 when they required he learn to restrain people).

The Commissioner must evaluate a claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a); *Lester*, 81 F.3d. at 833 (9th Cir. 1995). A claimant need not be utterly incapacitated and even the "sporadic ability to work" is not inconsistent with disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Lester*, 81 F.3d at 833. As the ALJ failed to account for substantial evidence in the record concerning Plaintiff's difficulties in the performing the work of a surveillance officer, as well as his inability to successfully maintain the work, it is not clear from the ALJ's decision how Dr. Henderson's opinion was inconsistent with Plaintiff's work in 2012.

Finally, the ALJ also discounted Dr. Henderson's opinion because her comment that Plaintiff was unable to pass his college courses was inconsistent with Plaintiff's testimony that he had recently done fairly well in college earning two A's and an A-minus. Tr. 30. Plaintiff's more recent academic success is an indicator of Plaintiff's cognitive strengths, which perhaps suggests Dr. Henderson had an underestimation of Plaintiff's ability to cognitively retrain. In contrast, Plaintiff's cognitive deficits (for example, in arithmetic and multitasking), reflected

in the tests performed by Dr. Thompson and evident at the time of Dr. Henderson's report, are also set forth in the ALJ's decision and academic history. Tr. 23 (noting Plaintiff was "kicked out" of community college for low grades); *see also* Tr. 588 (describing academic problems and suspension from school for failing math a second time); Tr. 598 (describing having been kicked out of community college for one quarter due to low grade point average and then again for an entire year); Tr. 604-05 (describing academic record); Tr. 621 (Dr. Thompson's opinion noting that though Plaintiff has completed college-level content courses, he would be "hard-pressed to ever pass a math requirement."). However, even an underestimation of Plaintiff's cognitive abilities, standing alone, is not a specific and legitimate reason to discount Dr. Henderson's opinion that Plaintiff was unable to work "secondary to combination of motor coordination difficulties complicated by dystonia when doing repetitive work." Tr. 803.

The ALJ failed to reject Dr. Henderson's opinion on the issue of disability with specific and legitimate reasons supported by substantial evidence.

*3. Jennifer Schultz, Ph.D.*

In April 2013, Dr. Schultz performed an Adult Complex Psychological Assessment. Tr. 695-703. Dr. Schultz diagnosed Plaintiff with anxiety disorder and alcohol abuse. Tr. 702. She noted that some of Plaintiff's test results were "very low." *Id.* She opined Plaintiff's ability to understand and reason is at a

borderline level; his memory ranged from borderline to average; his ability to tolerate or adapt to stress is "poor"; and his social interaction is "limited" and "impaired." Tr. 703. Dr. Schultz expressed that Plaintiff's anxiety and depression "might exacerbate his already low skills or be a source of some of his comprised abilities." *Id.* Plaintiff's prognosis was "guarded" based upon his ability to "find employment that fits his strengths without requiring skills in areas where he performs low such as executive functioning." *Id.*

The ALJ specifically accorded "less weight" to Dr. Schultz's opinion of impaired social limitations. Tr. 29. Whereas the opinion was contradicted by the state agency reviewing psychologists, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Schultz's opinion. *Bayliss*, 427 F.3d at 1216.

Here, the ALJ concluded Dr. Schultz's opinion was inconsistent with the record showing mild difficulties in social functioning where "he spent time with others," maintained a long-term relationship with his girlfriend, attended church and sporting events, and was employed working with people patients during his workday. *Id.* The ALJ also noted that while working at Legends, Plaintiff had requested work that would have involved substantial interaction with the public. Tr. 25. She further found Plaintiff's social problems were related to "his life circumstances, not problems stemming from his mental impairments." *Id.* The ALJ offered legally sufficient reasons supported by substantial evidence in the

record as a whole, including medical evidence that Plaintiff had "excellent interpersonal skills," though he endorsed feelings of social isolation. Tr. 788. Though Plaintiff can identify some evidence of social "problems" since childhood, *see* ECF No. 20 at 7, where evidence in the record that "is susceptible to more than one rational interpretation" the ALJ's findings must be upheld if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111.

The ALJ accorded "some weight" to the remainder of Dr. Schultz's opinion, finding it "consistent with objective testing." Tr. 29. Although an ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, the same standard does not apply when the ALJ credits opinion evidence. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216. Plaintiff contends an individual with borderline understanding, poor adjustment, and poor ability to adapt to stress is unlikely to be able to work without interruptions from psychologically based symptoms and is therefore likely to miss more than one day of work per month or require additional breaks. ECF No. 15 at 13. However, Dr. Schultz did not offer any opinion regarding the likelihood of Plaintiff missing work. Moreover, Plaintiff has not explained how the ALJ's RFC did not accommodate Plaintiff's limited executive functioning skills. ECF No. 20. The RFC limits Plaintiff to tasks that can be learned in 30 days or less and involving no more than simple work-related decisions and few workplace changes.

Tr. 26.  In the Ninth Circuit, an RFC restricting the claimant to simple tasks adequately captures moderate limitations in concentration, persistence and pace when it is consistent with the medical evidence.  *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008).

The ALJ did not error in weighing the medical opinion of Dr. Schultz.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for improperly discrediting his symptom claims. ECF No. 15 at 18-20.

An ALJ engages in a two-step analysis when evaluating a claimant's subjective symptoms.[7]  20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be

_____

[7] At the time of the ALJ's decision in October 2016, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016.  SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).  The ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded effective June 14, 2018 in favor of SSR 16-3p.  Neither party argued any error in this regard.

expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834 (9th Cir. 1995)); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.")). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore*, 278 F.3d at 924).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c) (1)–(3), 416.929 (c) (1)–(3). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." *Id*. at *2.

*1. Objective Medical Evidence*

The ALJ concluded the alleged severity of Plaintiff's hand complaints "exceed objective findings." Tr. 27. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining

the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857;

20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). Minimal objective evidence is a

factor which may be relied upon in discrediting a claimant's testimony, although it

may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir.

2005).

Here, the ALJ rejected the alleged severity of Plaintiff's hand complaints,

finding that they "exceed objective findings." Tr. 27. In reaching this conclusion

the ALJ relied upon "normal exam findings on hand exam in August 2012," at

Central Washington Rehabilitation with Dr. Mullin. Tr. 594. However, in the

same examination, Dr. Mullin recommended a neuromuscular specialist consult to

identify the cause of Plaintiff's motor difficulties and opined Plaintiff was limited

to "repetitive use of the hands less than 5 minutes at a time before there is a break."

*Id*. Moreover, the ALJ failed to discuss the objective testing performed the same

month by Dr. Thompson, finding Plaintiff should be considered a no-handed

worker. The ALJ also relied upon an intake progress note from Plaintiff's initial

neurology visit at Swedish Neuroscience with Lee-Loung Liou, M.D., noting that

Plaintiff "was in no acute distress," and had normal strength in the upper

extremities. Tr. 27-28 (citing Tr. 809). Yet, the ALJ failed to discuss the objective

results of the subsequent MRI which Dr. Liou found showed partial dysgenesis of

the corpus callosum and indicated would "explain [Plaintiff's] motor and cognitive

difficulties." Tr. 812. Considered in this context, the physical examinations on which the ALJ relied do not provide convincing reasons to discredit Plaintiff's statements regarding his symptoms, and reflect a selective consideration of the evidence.

### 2. Ability to Work and Academic Performance

Next, the ALJ found Plaintiff's ability to work for five months as a surveillance officer in 2012 showed "his capacity to work in a job for sustained periods." Tr. 27. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin*, 966 F.2d at 1258; *see also Bray*, 554 F.3d at 1227 (seeking work despite impairment supports inference that impairment is not disabling). Here, the ALJ rejected the contention Plaintiff had "significant problems with job performance." Tr. 27. However, as discussed *supra*, the ALJ failed to acknowledge the evidence in the record of the challenges Plaintiff faced in this line of work. *See supra* § B(2). In addition, the ALJ misconstrued the evidence of record concerning the timeline of events surrounding Plaintiff's resignation at Legends and ignored evidence that Plaintiff was asked to resign from the work after informing his employer Dr. Thompson's finding that he was unfit for that line of work due to his impairments. Tr. 55; Tr. 836 (Oct. 30, 2012 progress note stating Plaintiff "has been working in jobs that stress his weaknesses instead of building on his strengths."). The ALJ's conclusion that Plaintiff's work

in 2012 supports Plaintiff's capacity for work for "sustained periods" is not supported by substantial evidence.

The ALJ also identified Plaintiff's academic history as further support of the ALJ's RFC because Plaintiff was able to graduate from high school and take college courses toward becoming a substance abuse counselor. Tr. 28. The ALJ found "[t]here is no evidence indicating that he had substantial difficulty with school, concentration, studying, interacting with others, attendance, and other issues." The ALJ's finding that there is "no evidence" of substantial difficulty with school is belied by the evidence that Plaintiff failed his math classes, was on academic probation, and ultimately suspended from community college. Tr. 588, 604-05. The ALJ was required to explain how evidence of Plaintiff's academic performance contradicted Plaintiff's symptom claims. The ALJ's remark that "[t]his isn't a situation where he was unable to do anything," is not a clear and convincing reason to discredit Plaintiff, where Plaintiff never made this contention.

In sum, the ALJ's reliance upon Plaintiff's ability to work and academic performance to discredit Plaintiff was not supported by substantial evidence because the ALJ failed to consider and weigh the evidence of challenges Plaintiff faced both in his work in 2012 and in academic performance.

ORDER - 39

### 3. Unemployment Benefits

Third, the ALJ found that Plaintiff's receipt of unemployment benefits after his jobs ended in 2012 was indicative of his work capacity because it "would have required him to attest that he was ready, willing, and able to work." Tr. 27. "[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)). But where the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work," such a "basis for the ALJ's credibility finding is not supported by substantial evidence," as "[o]nly the former is inconsistent with his disability allegations." *Id.* As in *Carmickle*, the record does not establish whether Plaintiff held himself out for full-time or part-time work. Accordingly, Plaintiff's receipt of unemployment benefits and the related fact Plaintiff was applying for work cannot support the ALJ's decision to give less weight to Plaintiff's testimony.

### 4. Daily Activities

Fourth, the ALJ found that Plaintiff's daily activities were inconsistent with Plaintiff's allegation of disability. Tr. 28. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are

transferable to a work setting. *Orn,* 495 F.3d at 639; *see also Fair*, 885 F.2d at 603

(daily activities may be grounds for an adverse credibility finding "if a claimant is

able to spend a substantial part of his day engaged in pursuits involving the

performance of physical functions that are transferable to a work setting.").

"While a claimant need not vegetate in a dark room in order to be eligible for

benefits, the ALJ may discredit a claimant's testimony when the claimant reports

participation in everyday activities indicating capacities that are transferable to a

work setting" or when activities "contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations

omitted).

Here, the ALJ relied upon Plaintiff's alleged ability to care for his son, do

chores, lift weights, drive, and play video games. Tr. 28 (citing 450-57, 607, 698).

The ALJ concluded these activities show his capacity "to concentrate for longer

periods, focus, pay attention, organize, plan, go in public, adapt to different

environments, use his hands, lift objects, and maintain a schedule." Tr. 28. The

ALJ misstates the record as to the activity of weight lifting. The evidence reflects

Plaintiff could lift weights when he was younger, Tr. 587, 761, but he reported on

his Function Report that this was an activity he could no longer perform. Tr. 454,

464, 69 (Plaintiff's testimony that he tried to go to the gym and perform light

lifting but it caused cramping and pain in his hands and "a lot of frustration"

because he "couldn't do it."). As to the remaining activities, the Ninth Circuit has consistently held that a claimant need not be utterly incapacitated in order to be eligible for benefits. *See Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities ... does not in any way detract from her credibility as to her overall disability."). Plaintiff testified that any activity "in repetitive motion after a while" causes his hands to cramp up for getting a burning sensation in his fingertips and wrists, and this happens while performing any typing, writing, using a kitchen utensil, carrying groceries, or carrying his son. Tr. 64. It is unclear, how the limited activities cited by the ALJ, contradict Plaintiff's allegation that he is unable to engage in work involving sustained use of his hands. The ALJ's finding regarding Plaintiff's activities is not a clear and convincing reason to reject Plaintiff's symptom claims in their entirety.

### 5. Positive Response to Treatment

Finally, the ALJ noted Plaintiff reported chronic symptoms of anxiety and depression, the severity of which the ALJ discounted because of evidence Plaintiff's mental health symptoms of depression and anxiety improved with medication and therapy. Tr. 28. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled

ORDER - 42

with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

In the ALJ's discussion of Plaintiff's mental health symptoms, the ALJ first stated that Dr. Schultz had indicated that "cognitive testing results did not indicate any intellectual problems or any other cognitive diagnosis." Tr. 28. Though Plaintiff reported symptoms of both cognitive and emotional impairments, the ALJ does not appear to distinguish between the cognitive (visual reasoning, learning, and memory) and emotional aspects of Plaintiff's mental health symptoms and it is unclear how the ALJ found them related. Dr. Thompson evaluated them separately, though she noted Plaintiff's emotional deficits could impact Plaintiff's subjective sense of his brain functioning and his attention, concentration, learning and memory, and processing speed. Tr. 618; *see also* Tr. 702 (opinion of Dr. Schultz that Plaintiff's depression and anxiety may exacerbate Plaintiff's "low skills" or some of his "comprised abilities."). Beyond this lack of clarity in the ALJ's analysis of Plaintiff's symptom claims, the ALJ did not accurately describe Dr. Schultz's findings. Dr. Schultz remarked that her *own* test results did not reflect intellectual functioning, although certain scores were very low. Tr. 702. Dr. Schultz then stated that she deferred to Dr. Thompson's "knowledge and

experience" in regards to the diagnosis of cognitive disorder and mathematics disorder and stated that she believed Plaintiff "*fulfills criteria for those diagnoses*." Tr. 702 (emphasis added). As the ALJ did not properly consider and weigh Dr. Thompson's opinions upon which Dr. Schultz relied, this was not a clear and convincing reason to discount Plaintiff's symptom claims.

The ALJ also cited progress notes from April 2013, May 2013, and March 2014, which reflected symptom improvement with therapy and after having been prescribed Zoloft, Wellbutrin, and Ritalin. Tr. 28-29 (citing Tr. 721 (April 2013: noting symptoms appear improved and advising Plaintiff to allow more time on Zoloft) Tr. 717 (May 2013: noting Plaintiff stopped Zoloft on his own); 716 (May 2013: noting rapid response to Wellbutrin); Tr. 824 (March 2014: He "appears to be responding well to therapy…")). At the 2016 hearing, Plaintiff reported that symptoms of depression cause him to feel unhappy and he has "taken every antidepressant there is," Tr. 105, but he also believed he could "endure" his symptoms of depression in his position at Spectrum. Tr. 109. The evidence of improvement in symptoms of depression and anxiety, as well as Plaintiff's somewhat equivocal testimony, support the ALJ's conclusion Plaintiff's depression could be managed and that Plaintiff's mental limitations did not affect his ability to interact with the public. Tr. 30. This is also consistent with Dr. Thompson's 2012 opinion that Plaintiff's high level of depression and anxiety at the time could be

expected to have "small, measurable impacts" on his level of functioning, however, if "treated sufficiently, it is possible that he would feel more confident about his brain functioning." Tr. 786. However, as discussed above, the other reasons the ALJ provided for discounting Plaintiff's symptoms claims failed to meet the specific, clear and convincing standard. Moreover, the evidence of improvement of his depression and anxiety with treatment, standing alone, does not provide a sufficient basis to support the ALJ's adverse determination in regards to all of Plaintiff's symptom claims.

**D. Step Five**

The Court has already determined that the failure to properly weigh the medical evidence and consider Plaintiff's symptom claims were error, which necessarily calls into question the validity of the ALJ's RFC, hypothetical to the vocational expert, and step five findings.

Plaintiff additionally argues that the ALJ erred at step five in (1) propounding an incomplete hypothetical; and (2) finding the number of jobs he can perform exist in "significant numbers in the national economy." ECF No. 15 at 14-16. The Court addresses this contention as it demonstrates additional errors which inform the discretion of the Court in the decision whether to remand for further proceedings or for immediate payment of benefits.

At step five, the burden of production shifts to the Commissioner to produce evidence that other work exists in significant numbers in the national economy that a claimant could perform in light of his age, education, work experience, and RFC. 20 C.F.R. § 416.920(e); *Valentine*, 574 F.3d 685, 689 (9th Cir. 2009). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. The Commissioner may meet this burden by using the testimony of a vocational expert (VE). *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Commissioner may pose a hypothetical question to the VE "that reflects all the claimant's limitations." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). "Hypothetical questions posed to a VE must 'set out *all* the limitations and restrictions of the particular claimant.' " *Bray*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citing *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir.1991)) (emphasis in original). The ALJ's depiction of the claimant's impairments must be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

Here, although the ALJ found Plaintiff limited to lifting and carrying up to 10 pounds, the hypothetical he posed to the vocational expert assumed an individual limited to "light work," which involves the ability to lift no more than 20 pounds occasionally and 10 pounds frequently. Tr. 115; 20 CFR §§

404.1567(b), 416.967(b).  Defendant concedes the ALJ's omission of the 10-pound

lifting restriction was error.  ECF No. 19 at 16; Tr. 114-15, 117.

Defendant contends the ALJ's incomplete hypothetical constitutes harmless

error because one of the three occupations identified by the ALJ in his step five

finding, furniture rental consultant, was also identified by the vocational expert at

the *first* hearing in response to a hypothetical question that was consistent with the

ALJ's current RFC assessment.  ECF No. 19 at 16 (referring to Tr. 72-73 (first

hearing), 118 (second hearing).

Defendant's reliance on the testimony of the vocational expert at the first

hearing is misplaced.  First, the ALJ's error in formulating the hypothetical is more

egregious considering that the need for clarification of the precise RFC and

supplemental vocational testimony was the precise issue the Appeals' Council

ordered the ALJ to correct on remand.  Tr. 208-11.  The vocational testimony

indicates that Plaintiff's limitations significantly limit the number of jobs available

and if he were limited to sedentary work, there would be no work he is able to

perform.  Tr. 118-19.  Moreover, the ALJ could not have relied upon the prior

vocational expert testimony because an unresolved conflict in the vocational

evidence existed.  After the ALJ's first decision, Plaintiff presented a labor market

study by vocational consultant Trevor Duncan, Tr. 511-21, to the Appeals Council.

Mr. Duncan opined that the job of furniture rental clerk is performed with frequent

(not occasional) upper extremity use including reaching, grasping and fingering, and that 75 percent of the jobs fall within the medium level of physical demand due to lift requirements. Tr. 515. Plaintiff's brief to the Appeals Council argued the record lacked adequate vocational evidence regarding the furniture rental clerk job and that it was improperly listed in the Dictionary of Occupational Titles (DOT) as only requiring occasional reaching and handling. Tr. 523-24. The Appeals Council did not elaborate on this evidence in its remand order, however, it granted Plaintiff's request for review and remanded with instructions to the ALJ to clarify the RFC, indicating "[t]he cited jobs appear to be inconsistent with parts of the stated RFC," and to obtain supplemental evidence from a vocational expert to clarify "the effect of the assessed limitations on the claimant's occupational base." Tr. 210.

This evidence became part of the record before the ALJ on remand. Tr. 38. At the second administrative hearing, Plaintiff was represented by a non-lawyer representative,[8] and neither he nor the ALJ questioned the vocational expert regarding Mr. Duncan's findings regarding the occupation of furniture rental clerk.

_____

[8] The hearing transcript identifies Shane Smith as "Attorney for Claimant" and he is elsewhere in the record identified as an attorney. Tr. 348, 354. However, the ALJ described him as a non-attorney representative. Tr. 17.

ORDER - 48

Tr. 110-22.  At the hearing, the vocational expert testified that the DOT is "outdated."  Tr. 119.  While it was unfortunate that Plaintiff's representative did not challenge the conflict between the vocational expert's testimony and Mr. Duncan's findings so it could have been addressed by the ALJ, ultimately it is the ALJ who bears the burden to inquire.  *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (an ALJ has the duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel).  The ALJ's decision repeats the assignment of little or no weight to Mr. Duncan's labor market study pertaining to the occupation of *bakery worker* – an occupation the vocational expert at the second hearing did not even discuss.  Tr. 31.  The ALJ completely ignored Mr. Duncan's separate opinion regarding the occupation of furniture rental clerk.

The ALJ had a responsibility to consider and discuss all probative evidence and certainly Mr. Duncan's opinion regarding the job of furniture rental clerk was more probative than his report concerning bakery workers.  It is not evident the ALJ considered this evidence.  Because the ALJ relied upon a flawed hypothetical and failed to resolve the conflict with vocational evidence favorable to Plaintiff which had been submitted to the Appeals Council, the Court cannot conclude that the ALJ's decision is supported by substantial evidence, or that any error in the flawed hypothetical is harmless.

Given the ALJ's reversible error in propounding a flawed hypothetical to the vocational expert and ignoring conflicting vocational evidence, the Court need not address Plaintiff's alternative contention that the three occupations identified by the ALJ do not exist in "significant numbers" under 20 C.F.R. §§ 404.1566(d) and (e) and 416.966(d) and (e).

**E. Credit as True**

As the Court has determined that the ALJ committed numerous reversible errors, it must be determined whether remand should be for further proceedings or to award of benefits.

Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595 (citations omitted). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the

claimant disabled on remand, we remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, this Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The Court finds that each of these credit-as-true factors is satisfied and that remand for the calculation and award of benefits is warranted. First, the record has been fully developed. Plaintiff's period of disability ended over three years ago. The record contains treatment records from Plaintiff's childhood dating back to 1989 and continuing to adulthood through 2014. It contains a 30-page neuropsychological assessment documenting the results of testing performed over the course of two days by Dr. Thompson, two function reports filled out by Dr. Thompson, a consultative physical performed by a rehabilitation specialist, a second psychological examination, and a 2014 MRI finding consistent with a congenital brain abnormality explaining Plaintiff's motor and cognitive impairments. The record also contains ample testimony from two full administrative hearings, as well as the third party function report completed by Plaintiff's sister. Second, as noted above, the ALJ erred in the evaluation of the facts surrounding Plaintiff's work attempts, in rejecting the medical opinions of examining specialists Dr. Thompson and Dr. Henderson, in rejecting Plaintiff's

testimony, in ignoring vocational evidence in the record, and failing to proffer a complete hypothetical at step five, as specifically directed on remand. Defendant has conceded a number of errors to this Court. ECF No. 19. The third prong of the credit-as-true rule is satisfied because the vocational expert was asked hypotheticals about the ability of an individual with limitations described by Dr. Thompson, and testified there were no sedentary jobs with only occasional handling and fingering limitations existing in the national economy that existed in significant numbers. Tr. 118-19. The credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations omitted). Plaintiff's applications have been pending for nearly six years, have been reviewed by an ALJ and the Appeals Council twice, and remanded once with little benefit because the ALJ again erred in properly assessing the RFC and determining step five. Further proceedings would appear to be devoid of useful purpose. *See Hill*, 698 F.3d at 1162 (noting a Court may exercise its discretion to remand a case for an award of benefits "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.") (internal citations and quotations omitted).

ORDER - 52

1    Finally, the record does not raise "serious doubt," that Plaintiff's

2 impairments limited him in ways that precluded sustained competitive work during

3 the period under review.  Defendant fails to offer any persuasive argument to the

4 contrary in Defendant's footnote referencing this issue, which appears to discuss

5 facts unrelated to this case.  ECF No. 19 at 18 n.4.

6    The Court therefore reverses and remands to the ALJ for the calculation and

7 award of benefits.

8                              **CONCLUSION**

9    Having reviewed the record and the ALJ's findings, this court concludes the

10 ALJ's decision is not supported by substantial evidence and free of harmful legal

11 error.  Accordingly, **IT IS HEREBY ORDERED**:

12    1. Plaintiff's Motion for Summary Judgment, ECF No.15, is **GRANTED.**

13    2. Defendant's Motion for Summary Judgment, ECF No.19, is **DENIED**.

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20

3. The Court enter **JUDGMENT in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits** consistent with the findings of this Court.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 21, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE